IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. _____

VERONICA POLK,                         )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )
                                       )
MECKLENBURG COUNTY,                    )
                                       )
        Defendant.                     )
_____  )

EXHIBITS FOR NOTICE OF REMOVAL

Exhibit 1:

    Application and Order Extending Time to File Complaint filed in the Superior
Court of Mecklenburg County, North Carolina, Case No. 20-CVS-7656

Exhibit 2:

    Summons and Complaint

Exhibit 3:

    Motion and Order Extending Time to Answer

Exhibit 4:

    Notice of Filing Notice of Removal, filed with the Mecklenburg County Clerk of
Superior Court

# STATE OF NORTH CAROLINA

_____Mecklenburg_____ County

MECKLENBURG COUNTY
FILED

JUN 0 4 2020

AT _____ O'CLOCK _____
BY _____
CLERK OF SUPERIOR COURT

File No. 20 CVS 7656

In The General Court Of Justice
☐ District ☒ Superior Court Division

**Name Of Plaintiff**
Veronica Polk

**VERSUS**

**Name Of Defendant**
Mecklenburg County and Mecklenburg County Health Department

**APPLICATION AND ORDER EXTENDING TIME TO FILE COMPLAINT**

G.S. 1A-1, Rule 3

| APPLICATION |
| --- |

The undersigned requests permission to file a complaint in this action within twenty (20) days of any order granting this Application, as provided in Rule 3 of the Rules of Civil Procedure. The nature and purpose of the action are:

**Name And Purpose Of The Action**

Plaintiff Veronica Polk brings this action against Mecklenburg County and its Health Department due to harassment during and the suspension and termination of her employment. She brings her claims under 42 U.S.C. 1983 for violations of her rights under he First Amendment, under the Americans with Disabilities Act as amended, under the Family Medical Leave Act and for violation of North Carolina's common law protection against wrongful termination, in violation of the public policies set forth in NCGS 143-422.1 for disability discrimination, and the public policies set forth in N.C.G.S. 130A-1 et.seq., and under the North Carolina Constitution, Article I, Sections One and Fourteen.

**Date**
06-04-2020

**Signature**

☐ Applicant
☒ Attorney For Applicant

| ORDER |
| --- |

The Court states that the nature and purpose of this action are as set forth above.

Therefore, it is ORDERED that permission is granted to the applicant to file a complaint in this action up to and including the date shown below.

**File Complaint On Or Before**
6-24-20
_(Date must be within 20 days of date of Order.)_

**Date Of Order**
6-4-20

**Signature**

☑ Assistant Clerk Of Superior Court   ☐ Clerk Of Superior Court

**NOTE:** _Under Rule 3 of the Rules of Civil Procedure, upon entry of this Order, a summons shall be issued and the summons and a copy of this Order must be served in accordance with the provisions of Rule 4. A complaint must be filed in this action within the period provided above and that complaint must be served in accordance with the provisions of Rule 4 or by registered mail if the plaintiff so elects. If a complaint is not filed within the above period, the action shall abate._

AOC-CV-101, Rev. 7/11
© 2011 Administrative Office of the Courts

(Over)

**EXHIBIT**
1

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

Scan No.

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff | |
| --- | --- |
| Veronica Polk | |
| **VERSUS** | |
| Name Of Defendant(s) | |
| Mecklenburg County | |

**CIVIL SUMMONS
TO BE SERVED WITH
ORDER EXTENDING
TIME TO FILE COMPLAINT**

G.S. 1A-1, Rule 4

| To: | To: |
| --- | --- |
| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| Mecklenburg County 600 East Fourth Street Charlotte NC 28202 | |

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**

**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or the plaintiff's attorney within thirty (30) days after you have been served with the complaint as authorized in the attached order. You may serve your answer by delivering a copy to the plaintiff or the plaintiff's attorney or by mailing a copy to one of them at his/her last known address.

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date | Time |
| --- | --- | --- |
| Julie H Fosbinder 501 E Morehead Street Charlotte NC 28202 | 6·24·20 | 11  ☒ AM  ☐ PM |
| | Signature | |
| | ☐ Deputy CSC   ☒ Assistant CSC   ☐ Clerk Of Superior Court | |

(Over)

AOC-CV-102, Rev. 3/19
© 2019 Administrative Office of the Courts

| | RETURN OF SERVICE | |
|---|---|---|

I certify that this Summons and a copy of the Order were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of this Summons and Order.

☐ By leaving a copy of this Summons and Order at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein, who is named below.

☐ As the defendant is a corporation, service was effected by delivering a copy of this Summons and Order to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Service accepted by defendant

| Date Accepted | Time Served | ☐ AM ☐ PM | Signature |
|---|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of this Summons and Order.

☐ By leaving a copy of this Summons and Order at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein, who is named below.

☐ As the defendant is a corporation, service was effected by delivering a copy of this Summons and Order to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Service accepted by defendant

| Date Accepted | Time Served | ☐ AM ☐ PM | Signature |
|---|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Date Received | Signature Of Deputy Sheriff Making Return |
|---|---|---|
| $ | | |
| Paid By | Date Of Return | Name Of Deputy Sheriff Making Return (type or print) |
| | | County Of Sheriff |

AOC-CV-102, Side Two, Rev. 3/19
© 2019 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

Mecklenburg ~~Gaston~~ County

File No.

20 CVS 7656

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff | |
| --- | --- |
| Veronica Polk | **CIVIL SUMMONS** |
| Address | ☒ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| City, State, Zip | |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
| Name Of Defendant(s) | Date Original Summons Issued |
| Mecklenburg County and Mecklenburg County Health Department | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| --- | --- |
| Mecklenburg County | Mecklenburg County Health Department |

⚠ **IMPORTANT! You have been sued!** These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra!** Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time | |
| --- | --- | --- | --- |
| Julie H. Fosbinder | 6.4.20 | | ☐ AM ☒ PM |
| Fosbinder Law Office | Signature | | |
| 501 East Morehead Street Suite One | | | |
| Charlotte NC 28202 | ☐ Deputy CSC ☒ Assistant CSC ☐ Clerk Of Superior Court | | |

| ☐ **ENDORSEMENT (ASSESS FEE)** | Date Of Endorsement | Time | |
| --- | --- | --- | --- |
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | | ☐ AM ☐ PM |
| | Signature | | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

**EXHIBIT**

2

| | RETURN OF SERVICE | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> *Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

> *Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20-CVS-7656

VERONICA POLK,

    Plaintiff,

v.

MECKLENBURG COUNTY,

    Defendant.

**COMPLAINT**
**(Jury Trial Demanded)**

MECKLENBURG COUNTY
FILED #75

JUN 2 4

CLERK OF SUPERIOR COURT

COMES NOW Plaintiff Veronica Polk, complaining of Defendant Mecklenburg County, and alleges as follows:

## INTRODUCTION AND NATURE OF ACTION

    1.    Plaintiff Veronica Polk (hereinafter "Ms. Polk" or "Plaintiff") worked as a Nurse for the Mecklenburg County Health Department (hereinafter "Health Department") for two years, helping low income patients. Over the last several years it has been well-known that the Health Department's standard of patient care and oversight severely deteriorated, resulting in an ongoing public health and safety crisis. The Health Department failed to inform scores of patients about their abnormal test results for Pap smears, which test for cervical cancer, and sexually transmitted diseases. When Ms. Polk's attempts to address the issues internally within the Health Department were dismissed and ignored, she spoke out to County officials. The County terminated Plaintiff shortly after she reported these issues to County Commissioners.

    2.    Plaintiff is a person with a disability within the meaning of the Federal Americans with Disabilities Act, and North Carolina's Equal Employment Practices Act. As such, Plaintiff required time off from work for medical appointments, treatment, and to recover from illness,

and received protected Family Medical Leave Act leave for treatment for her medical conditions. Plaintiff was treated with disdain, harassed, suspended from employment and terminated, in whole or in part due to her disability, treatment for her medical conditions, and FMLA leave.

3.    Plaintiff's claims arise under the Family Medical Leave Act, the Americans with Disabilities Act, as amended, the First Amendment to the U.S. Constitution, Article I, §§ 1 and 14 of the North Carolina Constitution, and North Carolina's common law protection against wrongful discharge in violation of North Carolina public policy.

## PARTIES

4.    Plaintiff Veronica Polk (hereinafter "Plaintiff" or "Ms. Polk") is an adult citizen and resident of Charlotte, Mecklenburg County, North Carolina.

5.    Upon information and belief, Defendant Mecklenburg County (the "County" or "Defendant") is organized under §153A of the North Carolina General Statutes, and has its principal office and place of business in Charlotte, Mecklenburg County, North Carolina, where it maintains and administers a health department known as the Mecklenburg County Health Department (the "MCHD" or "Health Department") which employed Plaintiff until April 29th, 2019.

6.    To the extent it is applicable, the County has adopted a plan of insurance pursuant to N.C. Gen. Stat. § 153A-435 and has waived its immunity from civil liability.

## JURISDICTION AND VENUE

7.    The unlawful practices alleged in this Complaint were committed in Mecklenburg County, North Carolina.

8.    Jurisdiction and venue are proper in this Court pursuant to N.C. Gen. Stat. §§ 1-75.4 and 1-79.

## ADMINISTRATIVE PROCEDURES

9. Plaintiff timely filed a complaint of discrimination and retaliation against the County with the Equal Employment Opportunity Commission ("EEOC") on or about April 22nd, 2019.

10. On or about March 9, 2020, Plaintiff received a Notice of Right to Sue from the EEOC entitling her to commence an action within 90 days of receipt of that notice.

11. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## BACKGROUND

12. Mecklenburg County is the largest county in North Carolina, with over one million in population.

13. The Health Department provides medical services to Mecklenburg County, which includes Charlotte and the surrounding area. The Health department has over 800 employees.

14. The Health Department's role is to protect the public, including controlling public health threats such as sexually transmitted diseases, highly contagious diseases, and food-borne illnesses.

15. The Health Department provides health screenings, immunizations, HIV/STD testing, and family planning services. Its women's health clinic provides breast screenings, colorectal screenings, and pap smears.

16. The Health Department serves low income residents without health insurance. Its patients are mostly minorities, including refugees who require medical screenings.

17. In 2010, Plaintiff earned her Associates degree in nursing ("ADN") from MDT College of Health and Science.

18. Plaintiff is an African American female.

19. Plaintiff was hired by the County on or about January 9, 2017 and was employed as a pediatric Nurse Case Manager for one year, and then an nurse with the Women's Health work unit, primarily working with adult Sexually Transmitted Diseases (hereafter "Adult Health STD") Nurse from January 2018 until the termination of her employment.

20. Plaintiff was one of approximately 65 employees in her department.

21. As an Adult Health STD Nurse Plaintiff was responsible for informing patients and their partners of the results of sexually transmitted disease testing and referring patients out to appropriate agencies if necessary. Plaintiff worked with refugees and patients at risk for STD's.

22. Plaintiff always provided a high level of professional care for her patients.

23. Plaintiff is known for being an excellent Adult Health STD Nurse, who was able to handle the most difficult cases and to put patients at ease.

24. Health Department employees regarded Plaintiff as a team player who was dedicated, effective, efficient, and knowledgeable.

25. Plaintiff was well-versed in the Health Department's policies and procedures for general operation and health and safety.

26. The Health Department's patient care was so poor that public health and safety crises were imminent.

27. Plaintiff reported Health Department's health and safety crises up through the County's chain-of-command, which included County Management and Human Resources. Plaintiff also eventually complained to County Commissioners.

28.     The County retaliated against and terminated Plaintiff, in whole or in part, for reporting public health and safety crises to the County and County Commissioners.

29.     Plaintiff's education, training and experience enabled her to spot health and safety issues affecting patients in areas beyond her responsibility.  Plaintiff cares deeply about the communities the Health Department serves.

30.     Unfortunately, County Management and Human Resources were dismissive of or non-responsive to Plaintiff's complaints about patients' health and safety.

31.     Plaintiff reported serious concerns including but not limited to: inaccurate and untimely STD test results provided to patients; failure to provide language translation for Non-English Speaking patients; lack of patient care; and lack of oversight (hereinafter "Health and Safety Complaints").

32. In March 2018, Plaintiff initiated her first internal complaint.  Plaintiff emailed Human Resources and her supervisor Linda Kinney, Health Manager (hereinafter "Ms.  Kinney"), requesting that some corrective action be taken regarding the inaccuracies of sexually transmitted disease testing.  The County had failed to inform patients of positive test results often providing an inaccurate negative result. This misinformation provided to patients, affected patients care and health creating a large public health risk leading to patients' potential spreading of sexually transmitted diseases.

33. Upon information and belief, there had been a flaw in the STD testing process, resulting in testing inaccuracies. Despite management's knowledge of the testing inaccuracies, management pressured Plaintiff and others to report potentially false information to patients.

34. As a default management advised employees to inform patients that they tested negative for sexually transmitted diseases.

35. In March 2018, Plaintiff also raised concerns of improper training (i.e. instructing nurses to provide negative results to patients). Plaintiff offered to meet with Ms. Kinney to discuss these concerns.

36. The failure to report accurate test results often led to misinformation being provided to patients, potentially resulting in patients' spreading of sexually transmitted diseases.

37. However, Ms. Polk's complaint went unaddressed. No corrective action was taken.

38. In March 2018, Plaintiff also raised concerns to Ms. Kinney, regarding the Health Department's issuance of letters, written in English only to non-English speaking patients, which contained important test result information.

39. Plaintiff was aware that many of her patients were unable to comprehend the letters, because they were not fluent in English, and requested that the letters be translated.

40. Ms. Polk contacted Kirk Dodson, Administrative Support Coordinator (hereinafter Mr. Dodson) to retrieve a quote to translate a document.

41. Upon information and belief, on April 2, 2018, Ms. Kinney received an email from Mr. Dodson providing a quote to translate.

42. Ms. Kinney denied this request.

43. Ms. Kinney told Plaintiff that translation of letters would be financially burdensome to the Health Department.

44. Although Ms. Kinney spoke with Plaintiff about her complaints, nothing was done to address any of her concerns.

45. Plaintiffs concerns escalated as she noticed the lack of action in response to her complaints.

46.     In April 2018, Ms. Polk sought and received approval for FMLA leave due to her medical conditions.

47.     Plaintiff received approval from her doctors to return to work on April 20, 2018. Due to the Health Department's unnecessary delays, Plaintiff was not permitted to return to work until April 26, 2018.

48.     On April 26, 2018, upon return from her medical leave, Plaintiff noticed that she was locked out of her work computer. That same day, Human Resources contacted Plaintiff informing her that they would like to conduct a meeting regarding Plaintiff's concerns.

49.     Human Resources conducted a meeting with Ms. Polk, and told Plaintiff that Ms. Kinney was placing Plaintiff on suspension and that an internal investigation regarding Ms. Polk's health and safety concerns would be opened.

50.     Upon information and belief, Human Resources took no further action to address Ms. Polk's health and safety concerns.

51.     In the April meeting, Ms. Kinney criticized Ms. Polk, repeating a rumor that she had heard that Ms. Polk was seeking counseling due to her disability.

52.     During this time period, upon information and belief, Ms. Kinney also accused Ms. Polk of dishonesty, telling her co-workers that Ms. Polk just wanted time off from work to spend time with her family.

53.     The stated reason for Plaintiff's suspension was due to policy violations. Plaintiff was accused of non-compliance with Mecklenburg County Human Resources Policy & Procedures. Plaintiff denies non-compliance, denies that she had poor performance, and alleges that prior to her taking leave and complaining of safety concerns she was recognized by Ms. Kinney as an exemplary employee.

54.     Before Plaintiff's complaints and medical leave, Ms. Kinney would often praise Plaintiff for her performance acknowledging that "the team was lucky to have her."

55.     On March 22, 2018, Ms. Kinney acknowledged Plaintiff in an email expressing the importance of Plaintiff's value to the team and stating, "We are a dream team!"

56.     Ms. Kinney's compliments about Plaintiff's work performance came to an abrupt halt when Plaintiff began making formal complaints of health and safety violation. Those complaints and Plaintiff's disability and need for FMLA leave triggered Ms. Kinney's hostile and retaliatory behavior.

57.     Plaintiff returned from her 30-day suspension on June 4, 2018.

58.     On June 4, 2018, a meeting was held with Ms. Kinney, Ms. Polk, and Natasha Jeffries, Employee Relations Specialist (hereinafter "Ms. Jeffries").

59.     During the meeting Ms. Kinney stated that Ms. Polk was lucky to have her job, and tried to make it appear that she had gone to bat for Ms. Polk

60.     Ms. Kinney presented Plaintiff with a list of new expectations that were required of Plaintiff prior to returning to the clinic for work.

61.     Plaintiff expressed concerns about Ms. Kinney's lack of integrity in the workplace. No further action had been taken on Ms. Kinney's dishonesty, targeting, and retaliation towards Plaintiff. Ms. Kinney's targeting and retaliation towards Plaintiff continued.

62.     Ms. Polk's father became gravely ill in late June 2018, and she went on medical leave to attend to him from July 3rd to August 22nd. Prior to her leaving, Ms. Kinney challenged Ms. Polk, questioning how much leave she really needed to care for her father.

63.      Upon return to work in August 2018, the locks in Ms. Polk's office had been changed. Plaintiff contacted Ms. Kinney requesting assistance. Ms. Polk was told by Ms.

Kinney to meet her at another clinic. On arrival Ms. Kinney denied that the office locks had been changed and provided Ms. Polk with a set of new keys.

64.     Other employees told Ms. Polk that Ms. Kinney had changed the locks while Plaintiff was out on medical leave.

65.     Ms. Kinney told Plaintiff that she hoped no one else in her family got sick because she would not allow Plaintiff another leave if needed.

66.     Ms. Kinney continued to harass Ms. Polk over her use of approved FMLA leave.

67.     Ms. Kinney consistently directed hostile comments towards Ms. Polk referring to Plaintiff's approved leave as "summer absence", "summer vacation", "summer getaway", and "summer leave."

68.     Ms. Kinney falsely accused Ms. Polk of not being in the workplace as scheduled.

69.     The leave policy had been changed at the direction of Ms. Kinney who placed new guidelines for complying with leave approval.

70.     Plaintiff was now required to confirm through email that Ms. Polk worked until the end of shift. Moreover, Ms. Kinney began to closely monitor Plaintiff's activity.

71.     Ms. Kinney continued to castigate Ms. Polk, threatening her with unwarranted write-ups for her performance in previous months.

72.     On August 24, 2018, Ms. Polk asked to meet with Ms. Kinney's supervisor to discuss Ms. Kinney's false allegations against her. A meeting was held, and immediately thereafter Ms. Kinney issued a written warning to Ms. Polk, backdated to June 27, 2018.

73.     Based on the Health Department's past actions and failure to act, Plaintiff reasonably felt as if she had no one else to turn to internally to report problems that affected the health and safety of patients.

74. In or around September 2018, Plaintiff emailed County Manager Diorio and County Commissioner Scarborough expressing concerns that Clinical Services Manager Kinney's suspension of Plaintiff in or around April 2018 was retaliation for her "speaking out" about the poor judgment of the Health Department—again, relating to her complaints that patient safety and health were being compromised. Based on the Health Department's past actions, and failure to respond to her complaints, Plaintiff reasonably felt she had no one to turn to internally.

75. In September 2018, Plaintiff received a call from Human Resources informing Plaintiff that she was to report to Human Resources immediately.

76. In or around September 2018, Plaintiff again met with Human Resources, and discussed Plaintiff's health and safety concerns. No action was taken.

77. In fact, no one with the County responded or took action regarding Plaintiff's Health and Safety Complaints even though Plaintiff was trying to help the County address and correct the problems, to improve the quality of care it provided to patients, and to promote health and safety for patients.

78. On September 12, 2018, Ms. Kinney ordered Plaintiff to work at a shelter to assist during the anticipated hurricane disaster and told Ms. Polk that noncompliance would place Plaintiff's job in jeopardy.

79. Upon information and belief, other similarly situated Health Department employees had been provided the option to sign up on a list to work at the shelter. However, Plaintiff was the only employee ordered to work at the shelter.

80. In September 2018, Ms. Kinney falsely accused Plaintiff of having a drug or alcohol habit, due to her hand tremors, and offered to help her overcome it. Ms. Kinney said that if Ms. Polk just told her the truth about her addiction, she, as a Greek., could help Ms. Polk.

81.     On or about September 20, 2018, Ms. Kinney and Tesha Boyd, Assistant Health Director Clinical Services (hereinafter "Manager Boyd") presented Ms. Polk with an annual review. This annual review's ratings were low, and the low ratings were retaliation for Ms. Polk's health and safety complaints and her disability, treatment for her medical conditions, and FMLA leave.

82.     During the annual review, although Ms. Kinney depicted Plaintiff as an employee who lacked the ability to interact professionally, Ms. Kinney acknowledged that she had intentionally provoked negative interactions with Plaintiff and other employees.

83.     Ms. Kinney criticized Plaintiff's absences., ignoring the fact that she had been out on FMLA leave, and tried to hold Plaintiff accountable for staffing and work assignments she could not have performed because she was out on leave.

84.     Upon information and belief, similarly, situated employees were all presented with an annual raise, and Plaintiff was the only employee who was denied an annual raise.

85.     Ms. Polk immediately filed a grievance about her annual review of September 20, 2018, and against Manager Boyd for failing to address the retaliation against Polk from Ms. Kinney.

86.     On or about November 5, 2018, Ms. Polk was notified that her grievance allegations were unsubstantiated.

87.     On November 13, 2018, Ms. Polk appealed the grievance findings.

88.     Immediately following her performance review Plaintiff had been tasked with additional duties (those of a Triage Nurse) making it impractical to complete her tasks in a timely manner. Ms. Polk was essentially assigned two roles and provided no training for the new duties delegated to her. Furthermore, Ms. Kinney assigned new duties and schedules which made it

impossible for Ms. Polk to complete daily tasks. Ms. Kinney informed Plaintiff that she would be switched to the evening shift. Ms. Polk's work was monitored more regularly than similarly situated employees.

89.     Moreover, when Ms. Polk sought to work overtime in order to finish her work, she was told that she was no longer allowed to stay late to complete daily tasks, yet Ms. Kinney continued to allow employees similarly situated to Ms. Polk to stay late and complete daily tasks.

90.     In or around October 28, 2018, Plaintiff submitted two requests for medical leave. Plaintiff's first request pertained to her personal medical conditions, while the second request pertained to her son's medical conditions.

91.     Plaintiff's leave request was approved for her personal conditions but the Human Resources Representative Tameka Small (hereinafter "Ms. Smalls") informed Plaintiff that they could not approve two requests for leave and denied Ms. Polk's request for FMLA leave for her son's medical conditions.

92.     Ms. Polk's October 28, 2018, request for medical leave was repeatedly denied. Moreover, she was required to complete an email questionnaire prior to receiving a decision for leave and received work reviews prior to receiving approval or denial of leave request. Similarly situated employees were not required to do the same prior to leave approval.

93.     Ms. Polk was repeatedly denied leave based on her supervisor's contention that her work was not completed, yet the work was not yet even due.

94.     Upon information and belief, no other similarly situated employee had been treated as poorly as Ms. Polk with respect to leave denial and discipline.

95.     On or about October 30, 2018, a meeting was held with Manager Boyd, Ms. Kinney, and Ms. Jenkins. Ms. Polk expressed her concerns regarding Ms. Kinney's creation of

an excessively heavy workload and intense micromanaging of Ms. Polk. After Ms. Polk was verbally attacked by all parties, she asked to leave the meeting. Manager Boyd responded "No you can't leave! Where they do that at?"

96. After the meeting Manager Boyd told Plaintiff that she was going to teach her how to be tough and work through "whatever it is you got going on in your head."

97. In or around November 2018, Plaintiff was forced to forfeit a pre-approved vacation due to clinic errors that caused an increase in Plaintiff's work. Meanwhile, Ms. Jenkins, Ms. Kinney, and Manager Boyd all went out on vacation.

98. Ms. Kinney threatened Plaintiff's job, saying "you better be glad you canceled your vacation."

99. Ms. Polk was out of work on medical leave from December 13, 2018, through January 2, 2019. Although Ms. Polk was under doctor's care and medical leave had been previously approved, soon after her return, on January 8, 2019, she was issued a disciplinary writeup for this and other absences, and Manager Boyd encouraged her to resign.

100. Plaintiff continued to do her job because she believed that all people should have access to quality healthcare. Her work was important to the community she served.

101. On January 23, 2019, Ms. Polk received notice that her FMLA request for intermittent leave had been approved for January 18, 2019 through July 17, 2019.

102. On February 1, 2019, upon return from her break, Ms. Polk returned to her office and was presented with an embarrassing note marked on her white board by Manager Boyd. Ms. Boyd did not engage in such hostile behavior with similarly situated employees.

103. On February 11, 2019, Ms. Polk became very ill while at work. Plaintiff immediately notified Manager Boyd and Ms. Jenkins, yet neither responded and Ms. Polk continued to work for an additional two hours until her pain became unbearable.

104. Ms. Polk emailed Manager Boyd and Ms. Jenkins and told them that she was going to the emergency room and would provide them with the appropriate documentation. Neither responded nor inquired as to Ms. Polk's health.

105. On or about January 1, 2019, Ms. Jenkins replaced Ms. Kinney as the Health Manager.

106. On March 11, 2019, Ms. Polk told Ms. Jenkins about her inability to secure needed FMLA leave for her son.

107. Ms. Jenkins suggested to Ms. Polk that she provide Ms. Jenkins with a copy of her son's therapy schedule and assured Ms. Polk that she would work with her.

108. Despite Ms. Jenkins' reassurances Ms. Jenkins began to penalize Ms. Polk in her efforts in getting her son the needed medical attention. Ms. Jenkins noted Plaintiff as leave without pay, accused her of not being at work, and required Plaintiff to utilize benefit time despite consistently averaging 40 hours, while other similarly situated employees continued to be treated more favorably as it pertained to leave policies and practices.

109. On March 11, 2019, Plaintiff filed a complaint under her name with the Office of General Inspector (hereinafter "OIG"). Her concerns for the health and safety of others had risen. No action had been taken by either internal management or the County commissioners to address those concerns. In this complaint Ms. Polk requested that corrective action be taken, identifying her concerns about health and safety of patients, including but not limited to

inaccurate and untimely STD test results, triple billing patients, and referral for additional services not warranted. No response or action was taken by OIG.

110. On March 14, 2019, County Manager Diorio held a general body meeting. During the meeting Ms. Polk raised her health and safety concerns regarding inaccurate and untimely STD test results provided to County Health patients, and failure to provide language translation for Non-English-Speaking patients, and the retaliation against Ms. Polk for speaking out.

111. On or about March 19, 2019 Plaintiff exchanged a set of emails with Julie Berger, Administrative Assistant III (hereinafter "Ms. Berger") Plaintiff informed her of multiple verbal and written complaints to Manager Boyd and Mecklenburg County Employee Relations team, as well as her grievance sent to County Manager Diorio.

112. On March 19, 2019 Ms. Berger acknowledged that Ms. Polk's grievance was received by the Human Resources Department on October 13, 2018.

113. Ms. Berger informed Plaintiff it was not her responsibility to handle a grievance of this type.

114. Plaintiff again addressed concerns encouraging Ms. Berger to follow through with her complaints. Plaintiff reiterated that she initially filed complaints both verbally and written to Manager Boyd and the Mecklenburg County Employee Relations team. She added that she had then sent a grievance to County Manager Diorio, and that she had not received a response.

115. Ms. Berger responded that she could not follow through with the complaint anonymously. Therefore, Ms. Berger asked Plaintiff if it was okay that she use Plaintiff's name when filing. Plaintiff responded "Yes. . . I encourage it!"

116.    Upon information and belief, Plaintiff's prior complaints had been filed, yet
Mecklenburg County Employee Relations team and County Managers had left her complaints
unaddressed. Thus no corrective action was taken, and Plaintiff was subjected to targeting and
retaliation throughout her course of employment.

117.    Ms. Polk heard nothing more from County Manager Diorio or Ms. Berger.
However, she was contacted by the County Administrators Tesha Boyd, Gibbey Harris, and Ms.
Kinney. Plaintiff received a letter on March 21, 2019 that had been backdated to December 27,
2018. The backdated letter informed Plaintiff that they had denied her appeal.

118.    Ms. Polk assisted a co-worker who filed a Civil Action against the County in
which he alleged retaliatory treatment for reporting issues overlapping with those raised by Ms.
Polk. This assistance, coupled with her recent complaints, added to the targeting and retaliation
against Plaintiff.

119.    On March 19, 2019, Ms. Polk left work ill, returned to the office on March 21,
2019, became ill again, and was out through March 25th.

120.    On March 26, 2019, upon Ms. Polk's return to work she was presented with an
email from Ms. Jenkins informing her that she was to complete work that went unattended while
Plaintiff was out ill.

121.    Ms. Polk advised Ms. Jenkins of her heavy workload and requested assistance.
While similarly situated employees had been granted request for assistance in similar
circumstances, Plaintiff's request was denied in this and other instances.

122.    On March 27, 2019, Plaintiff experienced an excruciatingly painful migraine and
went to the Emergency Room for assessment and treatment. Ms. Polk immediately contacted
Ms. Jenkins via text to inform her of her whereabouts. Ms. Jenkins responded to Plaintiff that

she must return to work, and if Plaintiff failed to do so pay approval for medical leave would be denied. Plaintiff left the Emergency Room immediately to find out upon her return to work that her attendance was not required.

123.    Plaintiff returned to the Emergency Room that evening with her two younger children. The Emergency Room providers were reluctant to release Plaintiff as she was suffering from severe neurological impairments. Plaintiff was released on March 28th, 2019 around 2:00 am under the condition that she follow up with a specialist in the morning.

124.    On March 28th, 2019, Plaintiff followed up with her medical appointments. Plaintiff contacted Ms. Jenkins and informed her that she would be late to work due to mandatory medical appointments.

125.    On March 28, 2019, against medical advice, Ms. Polk returned to work around 1:00 pm due to fear of consequences from the Health department.

126.    On April 1, 2019 Ms. Polk wrote to Ms. Jenkins, as well as Health Department managers, alerting them of "failed STD Notification" She explained that patients had been alerted but no confirmation was shown that they had been informed of prior positive STD test results.

127.    On April 2, 2019, Plaintiff was directed to the Human Resources office and informed that she was being placed on suspension.

128.    On April 29th, 2019, Plaintiff was terminated.

129.    Mecklenburg County Human Resources Department's stated reasons for termination were ongoing performance and attendance concerns.

130.    Upon information and belief, the decision to suspend and then to terminate Plaintiff was made by Health Department Managers who were aware of Plaintiff's Health and

Safety Complaints to the County and Commissioners, Plaintiff's disabilities, and her use of FMLA leave. The County terminated Plaintiff in retaliation, in order to contain the corruption and protect themselves and to retaliate against Plaintiff's complaints about public safety and health issues, use of FMLA leave and due to her disabilities.

131.    Upon information and belief, the County still employs individuals similarly situated to Plaintiff, and individuals less qualified than Plaintiff.

132.    As a result of the County's conduct, Plaintiff suffered severe emotional distress including but not limited to anxiety, depression, lack of trust, embarrassment, humiliation, hopelessness, loss of interest or pleasure in activities, and social isolation.

## COUNT I

**(First Amendment Violation – Health and Safety Complaints, 42 U.S.C. § 1983)**

133.    The allegations of the previous paragraphs are realleged and incorporated herein by reference.

134.    Plaintiff has the right under the First Amendment to the U.S. Constitution to speak as a citizen on matters of public interest and concern related to the public health and safety crises affecting patients of the Health Department, as well as the community.

135.    The public health and safety crises included matters of life and death for patients who were not being accurately informed or not informed at all of their test results for Pap smears, which test for cervical cancer; and certain sexually transmitted diseases. The health and safety crises included incorrect test results, lost or mislabeled human specimens, lack of oversight, non-compliance, lack of training, poor management within the Health department, and other health and safety concerns set forth above.

136.    When Plaintiff's concerns were not addressed internally by County Management and Human Resources, Plaintiff complained to a County Commissioner.

137.    Plaintiff was exercising her right to free speech when she complained to a County Commissioner.

138.    Plaintiff has the right under the First Amendment not to be punished or retaliated against by her public employer for speaking out as a citizen on matters of public interest and concern, or for engaging in protected activity.

139.    Plaintiff spoke on a matter of public concern when she shared her knowledge of the unacceptable health and safety crises affecting patients with a County Commissioner.

140.    Plaintiff's interest in expressing these concerns was primarily to protect and save the lives of the Health Department's patients, who are low-income groups without health insurance, and include minorities, refugees, women, and children.

141.    Plaintiff's speech is a matter of public concern because it exposed both potential and actual public health crises which are, or could potentially be, a matter of life and death to members of the community, as well as a matter of public disease control. Plaintiff exposed the public health crises.

142.    Plaintiff spoke as a private citizen and not as an employee, because her official job duties as a an Adult Health STD Nurse were to inform patients and their partners of sexually transmitted disease results and refer to the appropriate agencies and did not entail enforcement of health and safety standards, or gross mismanagement.

143.    The Health Department's interest in maintaining discipline and ensuring harmony as necessary to the operation of its mission of promoting public health was not impaired by Plaintiff's speech.

144. The legitimate interests of the Health department do not include failing to notify patients who may have cervical cancer, HPV, or are at high risk of developing cervical cancer; covering up the failure to notify patients of their abnormal test results; endangering the lives, health, and safety of members of the community, and public at large, including women and children; or retaliation.

145. Plaintiff's interest in expressing these public health crises involving potential and actual matters of health and safety and life and death, did not compete with the Health Department's interest in providing efficient and effective services to the public. The Health Department is responsible for failing to provide efficient or effective services to the public. To the extent that Plaintiff's speech created any perceived risk to the Health Department's interests, any such apprehension was unreasonable and outweighed by Plaintiff's meritorious interest in saving lives.

146. The Health Department terminated Plaintiff in whole or in part in retaliation for her speech about the problems of health and safety, cover ups, gross mismanagement, and the failure to meet the standard of medical care to which patients are entitled.

147. The Health Department's stated reason for terminating Plaintiff, for allegedly poor performance and attendance violations is mere pretext for its actual reason: that Plaintiff brought unwanted scrutiny to the Health Department's mismanagement which created public health crises, endangered lives, and endangered the health and safety of the public and the Health Department's employees.

148. The actions of the Health Department and the County, as described above, violated Plaintiff's rights. The Health Department terminated Plaintiff, in whole or in part, to punish Plaintiff because she engaged in speech protected by the First Amendment. They did so

without any legitimate justification; and upon information and belief the County deferred to the Health Department's decision.

149.     As a result of that violation of her First Amendment rights, Plaintiff has been injured.  Plaintiff has lost her job, her medical insurance, and other benefits.  She has been punished for her protected speech, and her exercise of that right has been improperly chilled.

150.     As a result of the County's actions, Plaintiff is entitled to have and recover all damages including reinstatement, compensatory, back pay, front pay, benefits, the costs of this action and attorney's fees, pursuant to 42 U.S.C. § 1988.

## COUNT II

**(Violations of the Americans with Disabilities Act, as amended, 42 U.S.C. 12101 *et seq..*)**

151.     The allegations of the previous paragraphs are realleged and incorporated herein by reference. Ms. Polk is a person with a disability within the meaning of the federal Americans with Disabilities Act, as amended,  and North Carolina's Equal Employment Practices Act.

152.     Ms. Polk has been diagnosed with PTSD, migraines, and other serious health conditions.  These conditions substantially limit her in one or more major life activities.

153.     Due to her medical conditions, Plaintiff required time off from work for medical appointments, treatment, and to recover from illness, and received protected Family Medical Leave Act leave for treatment for her medical conditions.

154.     Plaintiff's supervisors were well aware of her medical conditions, and Plaintiff was treated with disdain, harassed, suspended from employment and terminated, in whole or in part due to her disability, including her treatment for her medical conditions, and use of FMLA leave.

155. The Health Department and County Management knew about Plaintiff's medical conditions and disabilities as early as March 2018, and continuing through the days leading up to her suspension and termination.

156. The Health Department's stated reason for terminating Plaintiff, is pretext for its retaliation. The County would not have terminated Plaintiff but for her disabilities, leave and/or her protected activity.

157. The County wrongfully retaliated against and terminated Plaintiff in whole or in part because she is a person with a disability.

158. The County's discrimination against Plaintiff also included assignment to two jobs, wrongful denial of leave, suspension, a poor evaluation and denial of training opportunities.

159. As a result, Plaintiff is entitled to recover from the County general, special, compensatory, consequential, and treble damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial; injunctive relief to enjoin continued violations of the ADAAA; reinstatement of full fringe benefits and seniority rights; compensations for lost wages, lost benefits, and other economic losses that were proximately caused by the retaliatory action or discrimination; and reasonable costs, expenses, and attorneys' fees.

160. The Health Department through its employees and agents, either intended to cause or was recklessly indifferent to the likelihood that is conduct would cause severe emotional distress to Plaintiff.

161. The Health Department's conduct did in fact cause severe emotional distress to Plaintiff as set forth above. As a result, Plaintiff is entitled to recover from the County compensatory damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial for her emotional distress.

## COUNT III

**(Violations of North Carolina's Common Law Prohibition against Wrongful Termination In Violation for Public Policy, Based on the Policies Set Forth in the North Carolina's Equal Employment Practices Act NCGS 143-422.1 *et seq..*)**

162. The allegations of the previous paragraphs are realleged and incorporated herein by reference. Ms. Polk is a person with a disability within the meaning of the North Carolina's Equal Employment Practices Act. The public policy of North Carolina, as set forth in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143.422 *et. seq.)* prohibits workplace discrimination and wrongful termination employees because they have a disability.

163. Due to her medical conditions, Plaintiff required time off from work for medical appointments, treatment, and to recover from illness, and received protected Family Medical Leave Act leave for treatment for her medical conditions.

164. The Health Department and County Management including Plaintiff's supervisors were well aware of her medical conditions, and Plaintiff was treated with disdain, harassed, suspended from employment and terminated, in whole or in part due to her disability, including her treatment for her medical conditions, and use of FMLA leave.

165. The Health Department's stated reason for terminating Plaintiff **is** pretext for its retaliation and discrimination against Plaintiff because she is a person with a disability and/or because of her protected activities.

166. The County wrongfully retaliated against and terminated Plaintiff in whole or in part because she is a person with a disability.

167. The County's discrimination against Ms. Polk also included assignment to two jobs, wrongful denial of leave, suspension, a poor evaluation and denial of training opportunities.

168. As a result, Plaintiff is entitled to recover from the County general, special, compensatory, consequential, and treble damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial; reinstatement of full fringe benefits and seniority rights; compensations for lost wages, lost benefits, and other economic losses that were proximately caused by the retaliatory action or discrimination.

169. The Health Department through its employees and agents, either intended to cause or was recklessly indifferent to the likelihood that is conduct would cause severe emotional distress to Plaintiff.

170. The Health Department's conduct did in fact cause severe emotional distress to Plaintiff as set forth above.

171. The Health Department's conduct did in fact cause severe emotional distress to Plaintiff as set forth above. As a result, Plaintiff is entitled to recover from the County compensatory damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial for her emotional distress.

## <u>COUNT IV</u>

**(Wrongful Discharge in Violation of North Carolina Public Policy – North Carolina Public Health Law N.C. Gen. Stat. §130A-1 *et. seq.*, North Carolina Administrative Code – Health and Human Services, 10A NCAC 46.0201 and 10A NCAC 46.0216)**

172. The allegations of the previous paragraphs are realleged and incorporated herein by reference.

173. It is the public policy of North Carolina, as set forth in N.C. Gen. Stat. § 130A-1 *et. seq.* (hereinafter "NC Public Health Law"), that the "public health system is necessary to ensure that all citizens in the State have equal access to essential public health services. The General Assembly declares that the mission of the public health system is to promote and

contribute to the highest level of health possible for the people of North Carolina[.]". The NC

Public Health Law requires county health departments to follow 10 essential public health

services:

> (1) Monitoring health status to identify community health problems.
> (2) Diagnosing and investigating health hazards in the community.
> (3) Informing, educating, and empowering people about health issues.
> (4) Mobilizing community partnerships to identify and solve health problems.
> (5) Developing policies and plans that support individual and community health efforts.
> (6) Enforcing laws and regulations that protect health and ensure safety.
> (7) Linking people to needed personal health care services and ensuring the provision of health care when otherwise unavailable.
> (8) Ensuring a competent public health workforce and personal health care workforce.
> (9) Evaluating effectiveness, accessibility, and quality of personal and population-based health services.
> (10) Conducting research.

N.C. Gen. Stat. § 130A-1.1(b).

174. The Public Health Law also requires county health departments to follow state

regulations governing health and safety standards, including Quality Assurance (10A NCAC

46.0203) (hereinafter "QA Regulations") and Laboratory (10A NCAC 46.0216) (hereinafter

"Laboratory Regulations") services.

175. It is a violation of public policy to terminate employees for objecting to violations

of North Carolina public health statutes and regulations.

176. Plaintiff in good faith reported to Linda Kinney, County Management, County

Commissioner, and the OIG her concerns about continuing health and safety issues in the Health

Department, which led to hundreds of patients not being informed of abnormal pap smear test

results. Plaintiff's concerns were addressed in prior litigation.

177. Plaintiff also reported her fear of being targeted and subjected to retaliation by

management. Plaintiff's fear was realized after she was suspended and terminated shortly after

reporting continued health and safety concerns to management and a County Commissioner after the County took no action in response to her complaints.

178.    The temporal proximity between Plaintiff's complaints and her termination strongly indicates the decision to end her employment was retaliatory.

179.    The Health Department's stated reason for terminating Plaintiff, is pretext for its retaliation.  The County would not have terminated Plaintiff but for her protected activity and/or her disabilities.

180.    The County wrongfully retaliated against and terminated Plaintiff for complaining about health and safety issues.

181.    The County's retaliation also included assignment to two jobs, wrongful denial of leave, suspension, a poor evaluation and denial of training opportunities

182.    As a result, Plaintiff is entitled to recover from the County general, special, compensatory, consequential, and treble damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial; compensations for lost wages, lost benefits, and other economic losses that were proximately caused by the retaliatory action or discrimination; and reasonable costs, expenses, and attorneys' fees pursuant to

183.    Plaintiff's health and safety complaints included putting patients at risk,  lack of employee training; inaccurate and untimely test results provided to patients on health screens, and STD tests as well as the failure to provide patients accurate test results; lack of patient care; failure to meet quality assurance standards; and lack of oversight.

184.    The County and Health Department knew Plaintiff complained internally and externally to a County Commissioner at the time they decided to terminate Plaintiff. Plaintiff in good faith reported to her supervisors, to County Management, to  a County Commissioner, and

to the OIG her concerns about continuing workplace health and safety issues in the Health Department, which led to hundreds of patients not being informed of abnormal pap smear test results. Plaintiff's concerns were addressed in prior litigation. Despite the third-party consultants' confirmation of workplace health and safety issues and gross mismanagement coupled with prior lawsuits health and safety issues continued.

185.     Plaintiff also reported her fear of being targeted and subjected to retaliation by management. Plaintiff's fear was realized after she was suspended and terminated shortly after reporting continued workplace health and safety concerns to management and County Commissioners after the County took no action in response to her complaints.

186.     The temporal proximity between Plaintiff's complaints and her termination strongly indicates the decision to end her employment was retaliatory.

187.     The Health Department's stated reason for terminating Plaintiff's employment  is pretext for its actual reason to terminate Plaintiff of retaliation for her complaints about health and safety violations.

188.     The Health Department terminated Plaintiff in whole or on part due to her complaints about  health and safety violations.

189.     In so acting, the Health Department through its employees and agents, either intended to cause or were recklessly indifferent to the likelihood that its conduct would cause severe emotional distress to Plaintiff.

190.     The Health Department's conduct did in fact cause severe emotional distress as set forth above.

191.     The Health Department, through its employees and agents, violated North Carolina public policy prohibiting retaliation and terminating employees who object to violations of public health laws and regulations governing the County.

192.     The Health Department's conduct, as described above, was without justification or excuse, was reprehensible, and occurred despite Plaintiff's continued efforts to prevent, halt, and reverse the retaliatory treatment of her because of her multiple complaints to Health Department Management, Human Resources, County Management, County Commissioners, and her complaints to the OIG about the health and safety violations.

193.     As a direct and proximate result of the Health Department's unlawful conduct, Plaintiff is now and will continue to be unlawfully deprived of income in the form of wages, compensations, and other monetary and non-monetary benefits due to her, in amounts to be proven at trial.

194.     As a result, Plaintiff is entitled to recover from Defendant damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial, including consequential, general, special, and compensatory damages; injunctive relief to deter similar misconduct in the future; back pay; front pay; damages for emotional distress; pre- and post-judgment interest; and the costs of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays the Court as follows:

1.  Pursuant to Count I (First Amendment Violation – The Health and Safety Complaints), that Plaintiff have and recover all damages including reinstatement, compensatory, back pay, front pay, pre- and post-judgment interest, benefits, costs of this action and attorney's fees, pursuant to 42 U.S.C. § 1988;

2. Pursuant to Count II Plaintiff is entitled to recover from the County general, special, compensatory, consequential, and treble damages in excess of twenty-five thousand dollars ($25,000.00 in an amount to be proven at trial; injunctive relief to enjoin continued violations of the ADAAA; reinstatement to the same position held before the retaliatory termination or to an equivalent position; reinstatement of full fringe benefits and seniority rights; compensation for lost wages, lost benefits, and other economic losses that were proximately caused by the retaliatory action or discrimination; and reasonable costs, expenses, pre- and post-judgment interest, and attorneys' fees pursuant to N.C. Gen. Stat. §§ 95-241 and 95-243;

3. Pursuant to Count III (Wrongful Discharge in Violation of Public Policy –) Plaintiff is entitled to recover from the County damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial, including consequential, general special, and compensatory damages; injunctive relief to deter similar misconduct in the future; back pay; front pay; damages for emotional distress; pre- and post-judgment interest; and the costs of this action;

4. Pursuant to Count IV (Wrongful Discharge in Violation of North Carolina Public Policy – North Carolina Public Health Law N.C. Gen. Stat. § 130A-1 *et. seq.*, North Carolina Administrative Code – Health and Human Services, 10A NCAC 46.0201 and 10A NCAC 46.0216) Plaintiff is entitled to recover from the County damages in excess of twenty-five thousand dollars ($25,000.00) in an amount to be proven at trial, including consequential, general, special, and compensatory damages; injunctive relief to deter similar misconduct in the future; back pay; front pay; damages for emotional distress; pre- and post-judgment interest; and the costs of this action;

5. That this matter be tried by a jury; and

6. That the Court grant such other and further relief as this Court may deem just, proper, and equitable.

This the 24th day of June, 2020

FOSBINDER LAW OFFICE


Julie H. Fosbinder, N.C. Bar 19400
501 East Morehead Street, Suite 1
Charlotte, NC 28202
Jhanfos2@gmail.com
Telephone: (704) 333-1428
Facsimile: (704) 333-1431
*Attorney for Plaintiff*

STATE OF NORTH CAROLINA ~~FILED~~ IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG 2028 AUG 19 P 3: 19 FILE NO. 20-CVS-7656

MECKLENBURG CO., C.S.C.

VERONICA POLK,
    Plaintiff,

                                          MOTION TO EXTEND TIME
                                          TO FILE ANSWER
BY

vs.

MECKLENBURG COUNTY, and
MECKLENBURG COUNTY HEALTH
DEPARTMENT,
    Defendants.

)
)
)
)
)
)
)
)
)
)

Defendants, MECKLENBURG COUNTY AND MECKLENBURG COUNTY HEALTH DEPARTMENT, by and through their undersigned counsel, move the Court pursuant to Rule 6 of the Rules of Civil Procedure for an extension of time to answer the Plaintiff's Complaint until September 14, 2020. In support thereof, the undersigned affirms that our firm has been retained to represent the Defendants in this action. The undersigned does not know when, or if the Defendants have been served. Due to the Covid-19 pandemic, most employees of Mecklenburg County have been working from home. Tyrone Wade, Mecklenburg County Attorney, was first made aware of this action on Friday, August 14, 2020 and immediately retained the undersigned to represent the Defendants.

On August 14, 2020, the undersigned left a voicemail for Julie Fosbinder, Plaintiff's counsel, and sent Ms. Fosbinder an email requesting an informal extension of time until September 14, 2020 to respond to the Complaint. As of the time this is being sent to Court, the undersigned has not heard from Ms. Fosbinder. Additional time is needed to respond to the Plaintiff's Complaint.

This Motion is made in good faith and not for the purpose of delay.

This the _14th_ day of August, 2020.

RUFF, BOND, COBB, WADE & BETHUNE, LLP

By: _____
Robert S. Adden, Jr.
North Carolina State Bar No. 10223
831 East Morehead Street, Suite 560
Charlotte, North Carolina 28202
Telephone:    (704) 377-1634, Ext. 102
Facsimile:    (704) 342-3308
E-mail:       radden@rbcwb.com
*Attorney for Defendants Mecklenburg County*
*and Mecklenburg County Health Department*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing **MOTION TO EXTEND TIME TO FILE ANSWER and ORDER** were duly served upon the parties in accordance with the provisions of Rule 5 of the North Carolina Rules of Civil Procedure by depositing in the United States Mail in an envelope with postage prepaid and addressed to said parties as follows:

Ms. Julie H. Fosbinder
Fosbinder Law Office
501 East Morehead St., Suite One
Charlotte, NC  28202

This the 14th day of August, 2020.

**RUFF, BOND, COBB, WADE & BETHUNE, LLP**

By: _____
Robert S. Adden, Jr.
North Carolina State Bar No. 10223
831 East Morehead Street, Suite 560
Charlotte, North Carolina 28202
Telephone:    (704) 377-1634, Ext. 102
Facsimile:    (704) 342-3308
E-mail:       radden@rbcwb.com
*Attorney for Defendants Mecklenburg County and*
*Mecklenburg County Health Department*

204105.docx/RSA

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 20-CVS-7656

VERONICA POLK,
   Plaintiff,

vs.

MECKLENBURG COUNTY, and
MECKLENBURG COUNTY HEALTH
DEPARTMENT,
   Defendants.

)
)
)
)
)
)
)
)
)
)
)

ORDER GRANTING
<u>MOTION TO EXTEND TIME</u>
<u>TO FILE ANSWER</u>

FILED
2020 AUG 19 P 3:18
MECKLENBURG CO., C.S.C.
BY

  THIS CAUSE being heard by the undersigned Assistant Clerk of Superior Court on the Motion of Defendants Mecklenburg County and Mecklenburg County Health Department for additional time to answer Plaintiff's Complaint; and it appears to the Court that said Defendants have for good cause shown made application pursuant to Rule 6 of the Rules of Civil Procedure for additional time within which to answer Plaintiff's Complaint.

  IT IS THEREFORE ORDERED that the Defendants be, and are hereby granted additional time within which to answer Plaintiff's Complaint, to and including September 14, 2020.

  This the 19 day of August, 2020.

            Assistant Clerk of Superior Court

204105.docx/RSA

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: 20-CVS-7656

VERONICA POLK,
        Plaintiff,
v.

MECKLENBURG COUNTY,
        Defendant.

)
)
)
)
)
)
)
)
)

NOTICE OF FILING OF

NOTICE OF REMOVAL

TO:    Clerk of Superior Court
        Mecklenburg County Courthouse
        832 E. 4th Street
        Charlotte, NC 28202

      PLEASE TAKE NOTICE that Defendant Mecklenburg County has filed with the Clerk

of the United States District Court for the Western District of North Carolina, Charlotte Division,

a Notice of Removal of the above-captioned action. A copy of the Notice of Removal (without Exhibits)

is attached hereto. Pursuant to U.S.C. § 1446(d), this Court "shall proceed no further unless and until

the case is remanded."

                                   RUFF BOND COBB WADE & BETHUNE, LLP

                                   Ronald L. Gibson, NC Bar No. 8283

                                   Robert S. Adden, Jr., NC Bar No. 10223
                                   831 E. Morehead Street, Suite 560
                                   Charlotte, NC 28202
                                   Tel: 704-377-1634
                                   Fax: 704-342-3308
                                   Email: rgibson@rbcwb.com
                                   Email: *radden@rbcwb.com*
                                   *Attorneys for Defendant Mecklenburg County*

**EXHIBIT**
4

CERTIFICATE OF SERVICE

I hereby certify that the foregoing

NOTICE OF FILING OF NOTICE OF REMOVAL

has on this date been served upon Plaintiff's counsel of record by depositing a copy of same with the United States Postal Service with sufficient postage and addressed as follows:

Julie H. Fosbinder
Fosbinder Law Office
501 East Morehead Street, Suite 1
Charlotte, NC 28202

This the 2nd day of September 2020.

Ronald L. Gibson, NC Bar No. 8283