# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:20-CV-00483-FDW-DCK

| | |
|---|---|
| **VERONICA POLK,** | |
| **Plaintiff,** | |
| **v.** | **ORDER** |
| **MECKLENBURG COUNTY,** | |
| **Defendant.** | |

THIS MATTER is before the Court on Defendant Mecklenburg County's Motion to Dismiss for Failure to State a Claim. (Doc. No. 14). The Motion has been fully briefed and is ripe for review. For the reasons stated herein, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss. (Doc. No. 14).

## I. BACKGROUND

Plaintiff initially filed this lawsuit in Mecklenburg County Superior Court on June 24, 2020. (Doc. No. 1-1). Defendant timely filed its Notice of Removal and Answer with this Court on September 2, 2020.[1] (Doc. Nos. 1, 3). After Defendant filed its first Motion to Dismiss, (Doc. No. 6), Plaintiff sought leave to amend her Complaint, (Doc. No. 9), and leave to amend was granted. (Doc. No. 12). Plaintiff filed her First Amended Complaint on February 24, 2021, (Doc. No. 13), which serves as the basis for the following background.[2]

---

[1] Defendant was properly served on August 6, 2020, and timely removed on September 2, 2020. (Doc. No. 1, p. 1).
[2] The allegations in the Amended Complaint are taken as true for purposes of ruling on Defendant's Motion to Dismiss. Nothing in this Order should be construed as the Court making any findings of fact.

1

Plaintiff's claims arise out of her employment as a nurse with the Mecklenburg County Health Department ("Health Department"). (Doc. No. 13). Plaintiff was hired as a nurse in early 2017 and primarily worked with adults suffering from various sexually transmitted diseases ("STDs"). Id. During her time working for Defendant, Plaintiff alleges she noticed aspects of the Health Department's patient care were substandard. Id. Specifically, she was concerned about "inaccurate and untimely STD test results provided to patients; [the] failure to provide language translation for Non-English [s]peaking patients; [the] lack of patient care; and [the] lack of oversight." ("Health and Safety Concerns"). Id. at p. 5. Plaintiff allegedly reported her concerns to her supervisor, Linda Kinney ("Ms. Kinney"), in or around March 2018, and Ms. Kinney allegedly failed to address Plaintiff's concerns. Id. Shortly after making her initial report to Ms. Kinney, in April 2018 Plaintiff sought and obtained medical leave for her alleged disability, which included "severe migraines, PTSD, and other serious health conditions" under the federal Family and Medical Leave Act ("FMLA"). Id. at p. 7.

When Plaintiff returned to work on April 26, 2018, she was allegedly called into a meeting with Human Resources and Ms. Kinney where she was notified that she would be placed on a suspension while an internal investigation about the Health and Safety Concerns was conducted. Id. at p. 8. Plaintiff alleges the "stated reason for [her] suspension was due to policy violations" for failing to comply with Mecklenburg County Human Resources Policy & Procedures. Id. When Plaintiff returned from her 30-day suspension, Plaintiff alleges Ms. Kinney's previously frequent "compliments about Plaintiff's work performance came to an abrupt halt," and that Ms. Kinney allegedly "retaliate[d]" against Plaintiff because Plaintiff reported her Health and Safety Concerns and "expressed concerns about Ms. Kinney's lack of integrity in the workplace" Id. at p. 9.

2

Shortly after returning to work from her suspension, Plaintiff allegedly went on medical leave again under the FMLA to care for her "gravely ill" father. Id. Plaintiff was out of work from July 3, 2018, until August 22, 2018. Id. Upon her return, Plaintiff alleges the "locks in [her] office had been changed." Id. Plaintiff alerted Ms. Kinney about her office, and Ms. Kinney allegedly denied the locks had been changed and provided Plaintiff with a new set of keys. Id.

During the time between August 2018 and her termination in April 2019, Plaintiff contends she suffered myriad instances of harassing conduct at the hands of Ms. Kinney;[3] attended various meetings with Human Resources; voiced numerous and unanswered concerns both about Ms. Kinney's behavior and Plaintiff's initial Health and Safety Concerns; and submitted multiple FMLA leave requests, at least one of which was denied and at least one of which was approved.[4] Id. at pp. 9-13.

Eventually, in March 2019, Plaintiff alleges she again addressed her Health and Safety Concerns with the appropriate channels: first, on March 11, 2019, she filed a complaint with the U.S. Health and Human Services Office of Inspector General ("OIG"); second, on March 14, 2019, she raised her concerns during a general body meeting organized by County Manager Dena Diorio; third, on March 19, 2019, she exchanged emails with an Administrative Assistant, Julie Berger ("Ms. Berger"), who explained to Plaintiff that Plaintiff's "complaints" were received by Human Resources in October 2018.[5] Id. at pp. 15-16. Plaintiff alleges her complaints again went unaddressed until March 21, 2019, when she received a "backdated" letter from County Administrators informing Plaintiff her "appeal" had been denied.[6] Id. at pp. 16-17.

---

[3] For example, Plaintiff has alleged Ms. Kinney directed hostile comments at Plaintiff about Plaintiff's FMLA leave by referring to "Plaintiff's approved leave as 'summer absence.'" (Doc. No. 13, p. 10). Ms. Kinney also allegedly accused Plaintiff of "having a drug or alcohol habit due to [Plaintiff's] hand tremors." Id. at p. 11.

[4] The chronology in which these alleged incidents occurred is unclear from the Amended Complaint.

[5] It is unclear whether the "complaints" received by the Human Resources Department were about Plaintiff's initial Health Concerns, Ms. Kinney's behavior, or Plaintiff's FMLA leave.

[6] The Amended Complaint does not make clear exactly what Plaintiff appealed.

Plaintiff also alleges she was in and out of work due to various medical emergencies between March 19, 2019, and March 26, 2019. Id. She asserts that, upon her return from medical leave, on April 1, 2019, she "wrote" to "Health Department managers, alerting them of 'failed STD Notification[s].'" Id. at p. 18. On April 2, 2019, Plaintiff alleges she was placed on suspension by Human Resources. Id. She alleges she was terminated on April 29, 2019. Id.

Although the foregoing allegations as in the Amended Complaint and described above lack clarity as to their chronology, Plaintiff's specific allegations can be generally summarized as an allegation that Plaintiff's employment was unlawfully terminated (1) as retaliation for speaking out about her Health and Safety Concerns; (2) as retaliation for being disabled; and (3), as retaliation for taking leave under the FMLA.

Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of Plaintiff's Amended Complaint in its entirety.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when the pleading party fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal "sufficiency of a complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); accord E. Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads

4

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The Supreme Court has also opined:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (alteration in original) (internal citations omitted) (quoting Twombly, 550 U.S. at 555-56).

### III. ANALYSIS

Plaintiff has asserted the following causes of action against Defendant: (1) violation of the First Amendment; (2) violation of the Americans with Disabilities Act ("ADA"); (3) violation of North Carolina's prohibition of wrongful termination in contravention of the public policies set forth by North Carolina's Equal Employment Practices Act ("NCEEPA") and North Carolina's Public Health Law ("NCPHL"); and (4), violation of the FMLA. (Doc. No. 13).

#### a. First Amendment

Plaintiff's first cause of action alleges Defendant violated her First Amendment rights when Defendant terminated her employment after she raised her Health and Safety Concerns with leadership both within the Health Department and outside of the Health Department. (Doc. No. 13). Specifically, Plaintiff alleges Defendant is liable under 42 U.S.C. § 1983 because Defendant has a "de facto policy of retaliating against employees" who exercise their First Amendment rights. Id. at p. 20.

5

To state a claim for First Amendment retaliation, a plaintiff must satisfy the three-prong test set forth in McVey v. Stacy, 157 F.3d 271 (4th Cir. 1998) and show that (1) she was a "public employee . . . speaking as a citizen upon a matter of public concern;" (2) her "interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public;" and (3), her "speech was a substantial factor in the employer's termination decision." Grutzmacher v. Howard Cnty., 851 F.3d 332, 341 (4th Cir. 2017) (quoting McVey, 157 F.3d at 277-78). The first two prongs, which determine whether the speech is protected by the First Amendment, are questions of law for the Court, while the third prong is a question of fact for a jury. Lane v. Anderson, 660 F. App'x 185, 191 (4th Cir. 2016).

Here, the Court is satisfied that Plaintiff has stated a First Amendment claim. Accepting the allegations in the Amended Complaint as true, and making all reasonable inferences in favor of Plaintiff, the Amended Complaint plausibly alleges that Defendant violated Plaintiff's First Amendment rights when it terminated her employment. Plaintiff sufficiently alleges she spoke on a matter of public concern when she alerted her superiors about inaccurate STD test results given to patients and potential language barriers between patients and providers. She also sufficiently alleged that her interest in raising her concerns outweighed Defendant's interest in providing efficient services. As to causation, the Amended Complaint is exceedingly unclear as to the chronology of events, but it is clear that Plaintiff repeatedly raised her Health and Safety Concerns with leadership, and she was terminated at some point after speaking up about her Concerns. It is entirely plausible that Plaintiff's speech was a substantial factor in her termination.

Because Plaintiff seeks relief pursuant to 42 U.S.C § 1983, and Defendant is a municipality, Plaintiff must also plausibly allege Defendant had a custom or policy of violating its employee's First Amendment rights. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

The Court is satisfied that she has met her burden at this stage in the litigation and DENIES Defendant's Motion to Dismiss Plaintiff's First Amendment claims. Defendant may raise the issues set forth in its Motion again at Summary Judgment.

### b. Americans With Disabilities Act

Plaintiff next alleges Defendant is liable for discrimination under the Americans with Disabilities Act ("ADA") because Plaintiff has a disability, and Defendant discriminated against her because of her disability at least once when it terminated her employment.[7]

To state a claim under Title II of the ADA, a plaintiff must show that "(1) [s]he was a qualified individual with a disability; (2) [s]he was discharged; (3) [s]he was fulfilling h[er] employer's legitimate expectations at the time of discharge; and (4) the circumstances of h[er] discharge raise a reasonable inference of unlawful discrimination." Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (quotations omitted). Of the four requirements to state a claim, Defendant takes issue only with the first and third requirements. The Court focuses its analysis accordingly.

A disabled individual under the ADA is someone who has "(A) a physical or mental impairment that substantially limits one or more . . . major life activities; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(2); see also Reynolds, 701 F.3d at 150. Here, Plaintiff has alleged she has "been diagnosed with PTSD, migraines, and other serious health conditions" which have limited her in "major life activities." (Doc. No. 13, p. 24). Although the Amended Complaint lacks factual detail about the major life actives Plaintiff is limited in, the Court is nonetheless satisfied that Plaintiff has plausibly alleged she is disabled within the meaning of the statute.

---

[7] Plaintiff also alleges discrimination in the form of "assignment to two jobs, wrongful denial of leave, suspension, a poor evaluation and denial of training opportunities." (Doc. No. 13, p. 25).

Plaintiff has also sufficiently alleged she was fulfilling her employer's legitimate expectations. In its Motion, Defendant accurately points out the Amended Complaint makes clear Plaintiff was on leave for extended periods; however, most, if not all, of Plaintiff's leave was allegedly taken pursuant to the FMLA. Plaintiff alleges she was "known for being an excellent . . . nurse" and that her fellow employees "regarded [her] as a team player who was dedicated, effective, efficient, and knowledgeable." (Doc. No. 13, p. 4). Plaintiff also contends her supervisor "would often praise Plaintiff for her performance[,] acknowledging that 'the team was lucky to have [Plaintiff].'" (Doc. No. 13, p. 8). Because the Court makes all reasonable inferences in Plaintiff's favor, the Court finds Plaintiff has stated a plausible claim under the ADA.

The Court DENIES Defendant's Motion to Dismiss Plaintiff's ADA claim. Defendant may raise the issues set forth in its Motion again at Summary Judgment.

### c. State Law Claims

Plaintiff also alleges Defendant is liable for wrongful discharge in violation of public policy as set forth in North Carolina's Equal Employment Practices Act ("NCEEPA"), N.C. GEN. STAT. § 143-422.1 *et seq.*, and in North Carolina's Public Health Law ("NCPHL"), N.C. GEN. STAT. § 130A-1 *et seq*. (Doc. No. 13). Defendant argues both claims should be dismissed because neither statute provides a private right of action. (Doc. No. 14-1, p. 13). In her Opposition Motion, Plaintiff explains that her claims "are not arising directly under the statutes, but common law claims based on the public policy set forth in the statutes." (Doc No. 19, p. 7). Thus, the question before the Court is whether Plaintiff plausibly alleges she was fired "in contravention of [an] express policy declaration" contained in the cited statutes. See Amos v. Oakdale Knitting Co., 416 S.E.2d 166, 169 (N.C. 1992).

### i. NCEEPA

North Carolina's Equal Employment Practices Act provides that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap." N.C. GEN. STAT. § 143-422.2(a). Here, Plaintiff alleges she was terminated at least in part due to her status as a disabled individual. (Doc. No. 13). If true, Plaintiff would have been terminated in contravention of a North Carolina public policy as expressed in the NCEEPA. The Court is satisfied that Plaintiff has plausibly alleged her termination was a result of her alleged disability status and accordingly DENIES Defendant's Motion to Dismiss Plaintiff's claim of wrongful termination in violation of public policy under the NCEEPA. Defendant may raise the issues set forth in its Motion again at Summary Judgment.

### ii. NCPHL

North Carolina's Public Health Law provides that "the mission of the public health system is to promote and contribute to the highest level of health possible for the people of North Carolina." N.C. GEN. STAT. § 130A-1.1(a). Plaintiff alleges that, because she was fired in retaliation for attempting to further the stated public health mission, she was wrongfully terminated in violation of state public policy. (Doc. No. 13, p. 28). Plaintiff misses the mark. North Carolina's Public Health Law is a comprehensive statute regulating the state's public health infrastructure. See § 130A-1.1 *et seq.* The "mission" Plaintiff cites to as the policy purportedly protecting her from wrongful discharge is not an express public policy declaration by the North Carolina General Assembly; rather, it is the stated purpose of the state's public health system. § 130A-1.1(a). Plaintiff has cited no law to the contrary, and the Court declines to read a public policy declaration into a state statute. To do so would be to directly contradict the Supreme Court of North Carolina—

9

a claim for wrongful discharge in violation of public policy requires an "*express* declaration of public policy," Amos, 416 S.E.2d at 169 (emphasis added), and there is no express public policy stated in North Carolina's Public Health Law. Compare N.C. GEN. STAT. § 143-422.2(a) with N.C. GEN. STAT. § 130A-1.1(a). Plaintiff has accordingly failed to state a claim and the Court GRANTS Defendant's Motion to Dismiss Count for wrongful termination in violation of public policy as set forth in North Carolina's Public Health Law.

### d. Family Medical Leave Act

Finally, Plaintiff alleges Defendant violated the Family Medical Leave Act ("FMLA") when it terminated her employment in part because she took FMLA leave. (Doc. No. 13, p. 31). Defendant argues Plaintiff has provided nothing more than conclusory statements in support of her FMLA claim. (Doc. No. 14-1, p. 14).

The FMLA "contains *proscriptive* provisions that protect employees from discrimination or retaliation for exercising their substantive rights under the [Act]," which include the right to take leave pursuant to the Act. See Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 546 (4th Cir. 2006). As set forth above, Plaintiff alleges she went on leave pursuant to the FMLA and she was discriminated against for taking such leave. For example, she alleges her immediate supervisor, Ms. Kinney, "directed hostile comments towards [Plaintiff] referring to Plaintiff's [FMLA] leave as 'summer absence.'" (Doc. No. 13, p. 10). This, coupled with the allegations that Plaintiff's employment was terminated roughly one month after returning from medical leave, is sufficient to render Plaintiff's FMLA claim plausible. The Court accordingly DENIES Defendant's Motion to Dismiss Plaintiff's FMLA retaliation claim. Defendant may raise the issues set forth in its Motion again at Summary Judgment.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss, (Doc. No. 14) is GRANTED IN PART and DENIED IN PART. Plaintiff's claim for wrongful discharge in violation of public policy as set forth in North Carolina's Public Health Law (Count IV) is DISMISSED. Defendant may reassert its arguments with respect to the remaining claims again at summary judgment.

IT IS SO ORDERED.

Signed: April 22, 2021

Frank D. Whitney
United States District Judge

11